[Civ. No. 4011. Third Appellate District.—February 21, 1930.]

JESSE POUNDSTONE et al., Respondents, v. ABDUL GOFOOR, Appellant.

Howe, Hibbitt & Johnston, for Appellant.

Rutledge & Rutledge for Respondents.

FINCH, P. J.—This is an action of unlawful detainer. Judgment was entered in favor of the plaintiffs and the defendant has appealed.

The defendant went into possession of 700 acres of land belonging to the plaintiffs under a lease dated March 1, 1927, but not signed by the defendant until March 21, 1927. It appears that the plaintiffs had orally agreed to lease the land to the plaintiff about the first of March, but that by reason of the defendant's objections to some of the details of the lease he did not sign it until the time mentioned. The plaintiffs signed the lease several days prior to March 21st, and left it with their attorney, at whose office it was understood the defendant was to sign it. When the defendant finally expressed his willingness to sign the lease the plaintiffs, on account of the lateness of the season for preparing so large an acreage for rice, required the defendant to sign an indorsement on the lease reading as follows: ''As a further consideration of the above lease said second party agrees that he will move upon said land and commence operations under said lease on or before the 24th day of March, 1927.'' Among the terms of the lease were the following:

''Said lessee agrees that he will plant said lands to rice. . . . The said lessee shall prepare said lands, check the same, and plant the seed and do all the irrigating and harvesting of the said rice in accordance with the best methods of husbandry practiced in the vicinity, and it is expressly understood and agreed that said lessee will properly and efficiently prepare said lands and seed the same and irrigate and harvest and thresh said rice crops and do all things necessary or proper in the business of farming said lands for rice. The intent of this paragraph is to secure the best

possible rice crop from said premises during the term of this lease, both in quantity and quality. . . .

"It is agreed that in case of default in the performance of any of the acts herein agreed to be performed by lessee, lessors may at their option, terminate this lease."

The court found "that said defendant failed and neglected to move on to said land and commence operations of plowing said land and preparing the same for rice culture, under said lease, on or before the 24th day of March, 1927, . . . and did not commence the operations referred to in said lease prior to the 5th day of April, 1927, the date of the service upon him of the notice hereinafter mentioned except that said defendant did, between the 25th day of March and the 5th day of April, 1927, prosecute certain work of disking a portion of said land; that defendant failed and refused to prepare said land for rice culture or to plow, or check the same for irrigation, or to commence the work of plowing or preparing or check the same for rice culture, in due or proper season or at all, but refused and neglected so to do. . . .

"That in order to successfully grow and raise a crop on said land in said season it was necessary that all of said work in the preparation of said land, especially the work of plowing, checking and preparing the same for irrigation, be done in due and proper season, and that all of said work be commenced not later than said 24th day of March, 1927, in order that the same be properly completed in time to be planted and irrigated thereafter in time to successfully raise a crop of rice thereon in said season, and the agreement on the part of said defendant as to the time for the commencement of it, and doing said work, plowing and preparing said land was an essential term of said contract, and the inducement on the part of the plaintiffs for the execution of the same on their part."

There is sufficient evidence to support the foregoing findings and, since such findings warrant the judgment in favor of the plaintiffs, it is unnecessary to consider other findings or the evidence in support thereof. Marion Poundstone, who was in charge of the plaintiffs' lands, testified that prior to March 25th the defendant "brought a set of disks. On the 25th of March, why he brought an engine. . . . The evening of the 25th he tried to work but he didn't . . . actually do

any work until the 26th. . . . The morning of the 26th I went down in the field and his engine was stopped. . . . His engineer . . . made the remark, 'The old heap won't pull the disks'. . . . We had this piece of land in field No. 1 that was not included in the lease; . . . it was looser, and they thought by going over there they might be able to do something with it, so I allowed them to go into field No. 1. . . . They disked the best they could; the work was very poor. . . . (He) never had any plows of his own; borrowed a set from Mr. Barnett about the 10th of April. . . . His engine was a 75 Best, but practically everything on it was worn out and it had no power. . . . I think on the 6th (of April) they . . . finished that field No. 1 and then pulled over to No. 2." The defendant testified that he had another "75 Best tractor and 44 head of livestock" which he could have used in doing the work, but he did not take either the second tractor or the livestock to the Poundstone ranch. He testified that he did not take any plows to the ranch until April 10th. The evidence shows that it is necessary to plant rice early in the spring in order to mature and harvest it before the beginning of the rainy season in the fall or winter months. Henry R. Vail, who raised rice during 1927 on a part of the same land which was covered by the defendant's lease, testified that "if the work was started by the first of March, I would think two engines of 60 type in good condition could take care of all the work" on the 700 acres of land; that if the work was commenced about the first of April, "I think I had about as few rigs in there as possible to get it through in time to make a crop"; and that he used in the preparation and planting of the land "a 75 Holt, 60 Best, 30 Best, and 75 Best, with one Fordson or possibly two Fordsons." Plaintiff Poundstone testified that on March 13th there was a rainfall of .40 and thereafter .10 March 31st, .76 April 1st and .66 April 2d.

From the foregoing evidence it may be inferred that, during a week of favorable weather after the time at which the defendant had agreed to "commence operations," he neither had an adequate equipment on the land nor made any reasonable effort to "properly and efficiently prepare said lands and seed the same" as required by the terms of the lease. In the language of counsel for respondent, "other people were working with a full force during those days.

They were vital days for the successful operation of rice growing. Mr. Poundstone had a right to believe if Mr. Gofoor was acting in good faith that he would have been on the ground with adequate equipment and that he would have been able to practically complete the plowing before the rain. . . . In considering whether or not there had been a substantial compliance with this lease, the circumstances surrounding the parties, the season of the year, the character of crop that was to be grown, the things that it was shown were required to (be done) . . . in order to successfully raise such a crop, all must be considered.'' Through the defendant's continuing neglect to discharge in any substantial manner, his obligations under the lease, the plaintiffs were faced with the necessity of either terminating the lease or running the risk of an entire crop failure on their land, the agreed rental being a share of the crop.

On April 2, 1927, the plaintiffs served a notice on the defendant to the effect that they had elected to terminate the lease by reason of his failure to perform the covenants thereof, specifying the particulars in which the defendant had failed. A part of the land was then leased by the plaintiffs to Vail, who commenced operations thereon about April 4th. On April 5th the plaintiffs served upon the defendant their demand that he ''vacate and surrender the possession of said premises.'' The appellant contends that this notice was insufficient because it did not give him the alternative right either to perform the covenants of the lease or surrender the possession of the premises. The time had passed at which the broken covenants could be performed and, therefore, demand for the performance thereof was not required. (*Pfitzer* v. *Candeias,* 53 Cal. App. 737, 740 [200 Pac. 839].) In this connection the appellant further contends that time was not of the essence of the contract. The plaintiffs' right to terminate the lease was not dependent upon whether time was of the essence thereof, but whether the defendant's failure to perform was a substantial breach for which damages would be an inadequate compensation. (*Mettler* v. *Vance,* 30 Cal. App. 499, 500 [158 Pac. 1044].) The defendant's failure to perform the covenants of the lease not only constituted a substantial breach of the terms thereof, but warranted the belief that he either could not

or would not in good faith discharge his obligations thereunder.

The court admitted evidence relating to negotiations between the parties leading up to the execution of the lease and conversations between them as to the importance of the early preparation of the land for seeding. Appellant contends that this was error. This evidence was properly admitted for the purpose of showing the situation and condition of the subject matter of the agreement and the understanding of the parties as to the meaning of the defendant's agreement to "commence operations" at the time specified. To "commence operations" might mean different things under differing circumstances. Appellant contends "that operations were commenced by the defendant on March 21, 1927, when he procured a disking machine and moved it to the camping grounds provided by the plaintiffs, and moved to and took possession of the camping ground near the rice fields." This construction of the covenant in question might be permissible under other circumstances, but it is perfectly clear from the circumstances proved in this case and the conversations between the parties prior to the execution of the lease that they understood the language used to mean that the defendant was to commence, with adequate equipment, the actual preparation of the land for seeding at a time not later than that stated. To have commenced operations, even at the time stipulated, with the wholly inadequate equipment used by the defendant would not have been a compliance with the terms of the lease. It was such inadequacy of equipment rather than the mere delay in the commencement of the work which constituted defendant's breach of the contract of lease and justified the plaintiffs' termination thereof.

Other points made by the appellant are not deemed of sufficient merit or importance to warrant the discussion thereof.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.